Najarro-Morales v. Garland

BIA
Ling, IJ
A212 982 790

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of November, two thousand twenty-four.

PRESENT:
> GUIDO CALABRESI,
> WILLIAM J. NARDINI,
> ALISON J. NATHAN,
> *Circuit Judges.*

_____

FRANKLIN ANTONIO NAJARRO-MORALES,
> *Petitioner*,

v.                                                             **23-6257**
                                                               **NAC**

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,
> *Respondent.*

_____

FOR PETITIONER:             Bruno J. Bembi, Esq., Hempstead, NY.

**FOR RESPONDENT:**     Brian Boynton, Principal Deputy Assistant Attorney General; Cindy S. Ferrier, Assistant Director; Michele Y. F. Sarko, Senior Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Franklin Antonio Najarro-Morales, a native and citizen of El Salvador, seeks review of a March 1, 2023, decision of the BIA affirming a June 26, 2019, decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Franklin Antonio Najarro-Morales*, No. A212 982 790 (B.I.A. Mar. 1, 2023), *aff'g* No. A212 982 790 (Immig. Ct. N.Y. City Jun. 26, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed the IJ's decision as modified by the BIA, considering only the grounds the BIA relied on. *See Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005). We review factual findings for substantial evidence and questions of law de novo. *See Paloka v. Holder*, 762 F.3d 191, 195 (2d Cir. 2014) ("Courts review *de novo* the legal determination of whether a group constitutes a 'particular social

2

group' under the [Immigration and Nationality Act]."); *Edimo-Doualla v. Gonzales*, 464 F.3d 276, 282–83 (2d Cir. 2006) (applying substantial evidence standard to nexus determination). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## I. Asylum & Withholding of Removal

### A. Particular Social Groups

To obtain asylum or withholding of removal, an applicant must establish past persecution or a well-founded fear of future persecution on account of a protected ground. *See* 8 C.F.R. §§ 1208.13(b), 1208.16(b)(1), (2). Najarro-Morales proposed particular social groups of (1) "individuals abused by the police because they suspect the victim is a member of a gang"; and (2) "individual[s] who [are] suspected by the gangs of being an informant against the gang." An applicant has the burden to establish that a proposed group is cognizable. *Paloka*, 762 F.3d at 195. A cognizable social group is "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Id.* at 196 (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (B.I.A. 2014)); *see also Ucelo-Gomez v. Mukasey*, 509 F.3d 70, 72–

3

74 (2d Cir. 2007). Particularity requires that the group be "defined by characteristics that provide a clear benchmark for determining who falls within the group" and that membership not be "amorphous, overbroad, diffuse, or subjective." *Paloka*, 762 F.3d at 196 (quoting *M–E–V–G–*, 26 I. & N. Dec. at 239). Social distinction requires that "society as a whole views [the] group as socially distinct." *Id*. (citing *M–E–V–G*, 26 I. & N. Dec. at 242).

The agency applied the correct standard for determining whether Najarro-Morales's proposed social groups are cognizable. Najarro-Morales argues that the IJ should have applied pre-*Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018) ("*A-B- I*") precedent because *A-B- I* was vacated by *Matter of A-B-*, 28 I. & N. Dec. 307, 309 (A.G. 2021) ("*A-B- III*"). In fact, the IJ did rely on pre-*A-B- I* precedent when it relied on *Matter of W-G-R-*, 26 I. & N. Dec. 208 (B.I.A. 2014), *M-E-V-G-*, and *Gashi v. Holder*, 702 F.3d 130 (2d Cir. 2012), in concluding that the proposed social groups were not cognizable. That was not an error. *See A-B- III*, 28 I. & N. Dec. at 308–09 (instructing IJs and BIA to rely on pre-*A-B- I* precedent).

Nor did the agency err in concluding that Najarro-Morales's proposed social groups were not cognizable. The agency reasonably concluded that his definition of the first group was circular. "Persecutory conduct aimed at a social group

4

cannot alone define the group, which must exist independently of the persecution," and Najarro-Morales defined the group by the abuse inflicted, i.e., that the group was those abused by the police because of suspected gang affiliation. *Paloka*, 762 F.3d at 196. He alleged that the police abused him because he did not have identification and they suspected him of being a criminal, not because of some immutable characteristic. *See id*. at 198 ("[A] particular social group is not cognizable merely because members have been subjected to harm." (quotation marks omitted)).

The agency did not err in finding that the second proposed group of informants against the gang was not cognizable. In *Gashi v. Holder*, 702 F.3d 130 (2d Cir. 2012), we found a cognizable social group of witnesses where the group consisted of individuals who had witnessed war crimes in Serbia, cooperated with international investigators, and had their names published on a list of potential witnesses. 702 F.3d at 137. Here, nothing in the record suggests that Najarro-Morales served as a witness against his attackers. Accordingly, Najarro-Morales's proposed group of suspected informants could include any individual who had ever reported a crime or been stopped or questioned by the police about a crime, and there was no evidence that society considered the group to be distinct.

5

*See id.*

**B. Imputed Political Opinion**

The BIA reasonable concluded that Najarro-Morales waived any claim that he was targeted by the gang or the police for an imputed political opinion. "[T]he BIA may refuse to consider an issue that could have been, but was not, raised before an IJ." *Prabhudial v. Holder*, 780 F.3d 553, 555 (2d Cir. 2015). Najarro-Morales does not challenge the BIA's waiver finding. Accordingly, he has abandoned his political opinion claim by not challenging the BIA's reason for rejecting it. *See Prabhudial*, 780 F.3d at 555–56 ("[T]his Court's review is limited to whether the BIA erred in deeming the argument waived."); *see also Debique v. Garland*, 58 F.4th 676, 684 (2d Cir. 2023) ("We consider abandoned any claims not adequately presented in an appellant's brief, and an appellant's failure to make legal or factual arguments constitutes abandonment." (quotation marks omitted)).

Najarro-Morales's additional arguments about asylum and withholding of removal are misplaced because the BIA did not reach the IJ's alternative findings. *See Yang*, 426 F.3d at 522; *see also INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

6

## II. CAT Relief

A CAT applicant has the burden to show that he will "more likely than not," 8 C.F.R. § 1208.16(c)(2), be tortured by or with the acquiescence of government officials. *See* 8 C.F.R. § 1208.18(a)(1). "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . by, or at the instigation of, or with the consent or acquiescence of, a public official." *Id.* "In assessing whether it is more likely than not that an applicant would be tortured . . . all evidence relevant to the possibility of future torture shall be considered, including, but not limited to . . . [e]vidence of past torture," ability to relocate within the country, "[e]vidence of gross, flagrant or mass violations of human rights within the country of removal," and "[o]ther relevant information regarding conditions in the country of removal." 8 C.F.R § 1208.16(c)(3). Substantial evidence supports the agency's conclusion that Najarro-Morales failed to establish likely torture. *See Quintanilla-Mejia v. Garland*, 3 F.4th 569, 592–94 (2d Cir. 2021) (applying substantial evidence review to determinations of likelihood of torture and acquiescence).

An applicant must "establish[] that someone in his particular alleged circumstances is *more likely than not* to be tortured." *Mu-Xing Wang v. Ashcroft*,

320 F.3d 130, 144 (2d Cir. 2003). Najarro-Morales submitted no evidence that police are looking for him or even know his name given that he had no identification on him when they beat him, he testified that he left El Salvador because he feared gangs, not the police, and the police did not seek him out in the 10 months that he remained in El Salvador after the one incident with the police. As to his fear of torture by gangs, there is no indication the gang members who shot at his house continue to look for him. And he did not establish that the police would more likely than not acquiesce to his torture by gangs given evidence of the authorities' actions against gang activity. *See Quintanillla-Mejia*, 3 F.4th at 593–94 ("[S]ubstantial evidence review does not contemplate any judicial reweighing of evidence. Rather, it requires us to ask only whether record evidence compelled a[] . . . finding different from that reached by the agency.").

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

8